IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CORVIAS MANAGEMENT-ARMY, LLC, et al.,** | * | |
| | * | |
| *Plaintiffs,* | * | |
| v. | * | |
| **PILADELPHIA INDEMNITY INSURNACE COMPANY, et al.** | * | Civil Action No. 22-cv-02285-GLR |
| *Defendants* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COUNTERCLAIM

Defendant and Counter-Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") brings this counterclaim against Plaintiffs and Counter-Defendants Corvias Management – Army, LLC and Meade Communities, LLC (collectively, "Corvias"), and states as follows:

## NATURE OF THE ACTION

1. This is a claim for declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of determining questions in actual controversy between Plaintiffs and Defendants concerning their rights, duties and obligations under certain policies of insurance issued by PIIC, and for unjust enrichment regarding amounts PIIC has paid to defend Plaintiffs in litigation against them and to settle claims against them.

## PARTIES

2. Philadelphia Indemnity Insurance Company ("PIIC") is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania.

3. Corvias Management – Army LLC ("Corvias Management") is a Delaware limited liability company with its principal place of business in Delaware.

4. Meade Communities, LLC ("Meade") is a Delaware limited liability company with its principal place of business in Maryland.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of costs and there is complete diversity of citizenship between the parties.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to PIIC's claims occurred within this District.

## THE ADDI LAWSUIT

9. On November 12, 2019, eleven families who are current or former tenants of military housing at Fort Meade, Maryland filed a class action lawsuit in the United States District Court for the District of Maryland against Meade and Corvias Management. The lawsuit is styled *Joseph Addi, et al. vs. Corvias Management-Army, LLC, et al*, Case No. 1:19-CV-03253-ELH (the "Addi Lawsuit").

10. The Addi plaintiffs filed an Amended Complaint on February 14, 2020, a copy of which is attached hereto as Exhibit 1.

11. The Amended Complaint alleged that Corvias ignored requests for maintenance and performed repairs in a substandard manner, resulting in water intrusion and damage, pests, mold infestation, drainage issues, plumbing problems and other defective conditions. At least one family also alleged that they were exposed to lead paint in their unit.

12. The Addi Amended Complaint alleged causes of action for Negligence, Gross Negligence, Negligent Breach of Warranty to Repair, Breach of Contract, Tort Arising Out of Breach of Contract, Constructive Eviction, Violation of §3951 of the Servicemembers Civil Relief Act, Violation of Maryland Real Property Article §8-211, Breach of Implied Covenant of Quiet Enjoyment, Unjust Enrichment, Unfair or Deceptive Trade Practices, Negligent Misrepresentation, Fraud, Nuisance and Civil Conspiracy.

13. The Addi Lawsuit has been settled and dismissed.

**THE PIIC POLICIES**

14. PIIC issued Commercial General Liability Policy No. PHPK1632992, effective April 1, 2017 to April 1, 2018, Policy No. PHPK1798659, effective April 1, 2018 to April 1, 2019, and Policy No. PHPK1964188, effective April 1, 2019 to April 1, 2020, to Corvias Group, LLC (the "PIIC CGL Policies"). The PIIC CGL Policies carry limits of liability of $1,000,000 per occurrence and $2,000,000 general aggregate.

15. PIIC issued Commercial Umbrella Liability policies, Policy No. PHUB578588, effective April 1, 2017 to April 1, 2018, Policy No. PHUB623353, effective April 1, 2018 to April 1, 2019, and Policy No. PHUB670673, effective April 1, 2019 to April 1, 2020 to Corvias Group, LLC (the "PIIC Umbrella Policies"). Umbrella Policy Nos. PHUB578588 and PHUB623353

carry limits of liability of $5,000,000 per occurrence, and Umbrella Policy No. PHUB670673 carries limits of liability of $10,000,000 per occurrence.

16. The evidence adduced during discovery in the Addi Lawsuit showed that none of the Addi plaintiffs experienced bodily injury.

17. The evidence adduced during discovery in the Addi awsuit showed that any bodily injury experienced by the Addi plaintiffs was solely caused by mold or other causes excluded by the PIIC CGL Policies and PIIC Umbrella Policies (the PIIC CGL Policies and PIIC Umbrella Policies are collectively referred to as the "PIIC Policies").

18. The evidence adduced during discovery in the Addi Lawsuit showed that any property damage experienced by the Addi plaintiffs was solely caused by mold or other causes excluded by the PIIC Policies.

19. The evidence adduced during discovery in the Addi Lawsuit showed that the sole damages claimed by the Addi plaintiffs were damages for matters other than bodily injury or property damage, including abatement of rent paid and moving expenses.

20. Corvias Management and Meade are Named Insureds under the PIIC Policies.

21. The PIIC CGL Policies contain Commercial General Liability Coverage Form CG 00 01 (12 04, 12 07 & 04 13).

22. Coverage A – Bodily Injury and Property Damage Liability provides in relevant part as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

\*\*\*

**2.    Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. …

**f.    Pollution**

(1) Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:
**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;
**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or

location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or
**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:
**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".
However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

23. The PIIC CGL Policies contain the following relevant Definitions:

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

24. The PIIC CGL Policies contain the following relevant Conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

…

**c.** You and any other involved insured must:

…

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; …

25. The PIIC CGL Policies contain a Fungi or Bacteria Exclusion endorsement which provides:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**
**2. Exclusions**
This insurance does not apply to:
**Fungi or Bacteria**
**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity. This exclusion does not apply to any

7

"fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**
**2. Exclusions**
This insurance does not apply to:
**Fungi or Bacteria**
**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or
in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**c.** The following definition is added to the **Definitions** Section: "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

26.  The PIIC CGL Policies also contain a Lead Liability Exclusion endorsement which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - LEAD LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

8

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

1. "Bodily injury," "property damage," or "personal and advertising injury" arising out of or caused by the actual or alleged:

    a. Exposure to or existence of lead, paint containing lead, or any other material or substance containing lead;

    b. Manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation,
    abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead;

    Whether or not the lead is or was at any time airborne as a particulate, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

2. Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury," "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead.

3. Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit related to, testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

9

27. The pertinent language of the PIIC Umbrella Policies is substantially similar to the PIIC CGL Policies.

## DEFENSE OF THE ADDI LAWSUIT

28. Corvias retained the law firm of Holland & Knight to represent their interests in the Addi Lawsuit.

29. Corvias tendered the Addi Lawsuit to PIIC for a defense.

30. PIIC agreed to defend Corvias pursuant to a reservation of rights.

31. Corvias rejected PIIC's offer to defend Corvias and asserted that it had a right to independent counsel and to control the defense of the Addi Lawsuit.

32. In an effort to reach a compromise agreement regarding defense, PIIC offered to allow Holland & Knight to represent Corvias, subject to certain conditions regarding rates and the manner in which the defense would be handled.

33. Corvias agreed to the conditions for permitting Holland & Knight to defend Corvias in the Addi Lawsuit.

34. Holland & Knight's actions in defending Corvias were outside the conditions to which the parties had agreed, including staffing, actions involved in the defense, and failure to keep PIIC informed of the progress of the Addi Lawsuit.

35. Corvias has breached the agreement regarding rates and conditions of the defense of the Addi Lawsuit by bringing this action to recover defense fees to which it is not entitled.

## COUNT I
### Declaratory Judgment – PIIC had the right to control the defense.

36. PIIC adopts and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37. Corvias tendered the Addi Lawsuit to PIIC for a defense.

38. PIIC agreed to defend the insured Corvias in the Addi Lawsuit pursuant to a reservation of rights.

39. PIIC had the contractual right under the PIIC Policies to choose defense counsel and to control the defense of Corvias in the Addi Lawsuit.

40. Moreover, Corvias had a duty to cooperate with PIIC in the defense of the Addi Lawsuit.

41. Corvias was not entitled to independent counsel for defense of the Addi Lawsuit.

WHEREFORE, PIIC respectfully requests that this Honorable Court enter judgment in its favor declaring that Corvias was not entitled to independent counsel or entitled to control the defense of the Addi Lawsuit and that PIIC had the sole right to choose defense counsel and to control the defense of Corvias in the Addi Lawsuit. In addition, PIIC requests such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT II
### Declaratory Judgment – There is no coverage available under the PIIC Policies for the claims asserted in the Addi Lawsuit

42. PIIC adopts and incorporates by reference the allegations set forth in paragraphs 1 through 41.

43. PIIC contends that there is no coverage available under the PIIC Policies for the claims asserted in the Addi Lawsuit for one or more of the following reasons:

    a. The Addi plaintiffs did not prove "bodily injury" as defined in the PIIC Policies;

    b. The Addi plaintiffs did not prove "property damage" as defined in the PIIC Policies;

    c. The Addi plaintiffs did not prove an "occurrence" as defined by the PIIC Policies; and

    d. The Addi plaintiffs' claims are excluded by the Fungi or Bacteria exclusion, Lead Liability exclusion, Pollution exclusion, Contractual Liability exclusion and/or Expected or Intended Injury exclusion.

44. Accordingly, PIIC had no duty to indemnify Corvias for the settlement of the Addi Lawsuit.

## COUNT III
### Unjust Enrichment

45. PIIC adopts and incorporates by reference the allegations set forth in paragraphs 1 through 44.

46. PIIC agreed to defend Corvias in the Addi Lawsuit pursuant to a reservation of rights.

47.     PIIC agreed to allow Holland & Knight to defend Corvias with the express condition that the agreed rates would be the most PIIC would pay for the defense. Corvias reneged on this agreement.

48.     Because Corvias had no right to independent counsel and no right to control the defense, Corvias has been unjustly enriched by the amount that PIIC paid for Corvias' defense that exceeds what PIIC would have paid if it had chosen defense counsel and controlled the litigation, an amount that exceeds $75,000.

49.     Because the PIIC policies do not cover the liability that Corivas had to the Addi plaintiffs, Corvias has been unjustly enriched by the amount that PIIC paid in contribution to the settlement of the claims, in an amount of $294,900.

WHEREFORE, PIIC requests that this Honorable Court enter judgment in its favor declaring that Corvias Management and Meade are obligated to reimburse PIIC for the amounts that PIIC paid for Corvias' defense in excess of what would have been paid if PIIC choose defense counsel and controlled the litigation and for the amount that PIIC paid in contribution to the settlement of the Addi Lawsuit. In addition, PIIC requests such other and further relief as this Court may deem just and proper under the circumstances.

/s/ *Margaret Fonshell Ward*
Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HERZOG & KINTIGH, P.A.
Executive Plaza 3, Suite 400
11350 McCormick Road
Hunt Valley, MD 21031
Phone:  410-584-2800

mward@downs-ward.com
***Attorneys for Defendant and Counter Plaintiff,
Philadelphia Indemnity Insurance Company***

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of November, 2022, a copy of the foregoing Counterclaim was electronically filed to all counsel of record.

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward